UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TRACI WEBB, | ) |
| | ) |
| Plaintiff(s), | ) |
| | ) |
| v. | ) Case No. 4:22-cv-00289-SRC |
| | ) |
| GKN AEROSPACE NORTH AMERICA, INC., et al., | ) |
| | ) |
| Defendant(s). | ) |

### Memorandum and Order

Five years after Traci Webb started working for GKN Aerospace, a serious motorcycle accident left her in a coma for twenty days and caused permanent damage to one of her eyes. When she returned to work, GKN accommodated Webb's doctor-imposed physical limitations—which included not driving at night and not moving more than twenty-five pounds—by allowing her to only work the first shift.   Years later, after she reported GKN to an ethics authority for what she believed were violations of federal quality-control regulations regarding aircraft-part manufacturing, Webb claims GKN constructively discharged her by moving her to a shift that failed to accommodate her physical limitations.   After Webb filed a lawsuit in state court, GKN removed the case, and now moves to dismiss for failure to prosecute and failure to state a claim. The Court grants the motion in part and denies it in part.

**I.      Background**

For purposes of the motion to dismiss, the Court accepts as true the following facts Webb alleges in her amended complaint.[1]   *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

[1] A "petition" in Missouri state court serves as the analogue of a federal "complaint."

GKN Aerospace North America, Inc. and GKN Aerospace of St. Louis, LLC (collectively, "GKN") employed Webb from April 2007 to March 2020. Doc. 9 at ¶ 7. In 2013, a motorcycle accident left Webb in a coma for twenty days and required a month-long hospital stay. *Id.* at ¶¶ 8, 27. As a result of her injuries, which included permanent damage to her left eye, Webb's doctors restricted her from driving at night and from "pulling, pushing or lifting anything over 10 to 25 lbs." *Id.* at ¶ 9. These restrictions "prevented her from being able to work the second shift from 3:00 p.m. to 11:00 p.m." *Id.*

Starting in 2015, as part of her job duties, Webb refused to approve "out of specification operations" in the facility; refused to approve parts that had lost "traceability"; and refused to approve the use of expired adhesive in the making of airplane wing parts because it would violate [Federal Aviation Administration] regulations. *Id.* at ¶ 11. In February 2019, she alleges she reported upper GKN management to an ethics authority for mismanagement, unethical behavior, and violation of applicable standards and policies—including demanding approval for out-of-specification operations; wanting [Webb] to move parts without completed work orders, losing traceability; and having employees "lay-up" expired adhesive. *Id.* at ¶ 12. According to Webb: "Defendants' actions were or would have been in violation of Defendants' and/or Boeing's legally-mandated quality system and would have constituted misrepresentations and/or misleading statements in violation of applicable federal regulations. These parts were ultimately to be used in Boeing's F-18 fighter aircraft." *Id.* at ¶ 13.

After Webb made her ethics complaint, she claims that team leaders and other managers and supervisors repeatedly harassed her and created a hostile work environment "as a result of her workplace restrictions and ethics complaint." *Id.* at ¶ 14. This harassment included supervisors and team leaders: "delivering parts to other employees but not to her, preventing her from doing her job; mocking her and laughing at her; yelling at her and verbally abusing her

2

without cause; and throwing a work order at her in front of other employees." *Id.* at ¶ 15. She claims that this harassment intensified until early 2020, in what she characterizes as an attempt to get her to quit. *Id.*

Then in February 2020, GKN transferred her from the first shift to the second shift, which would require her to drive home from work at night in violation of her doctor's orders. *Id.* at ¶¶ 16–17. Working the second shift also would require her to move items over 25 pounds if she was the only one working at the time. *Id.* at ¶ 17. She provided GKN with a "Certificate of Disability" from her eye doctor, and repeatedly raised the issue of her work limitations with her supervisors. *Id.* at ¶¶ 18–20. Her efforts were unavailing, however, and GKN refused to allow her to continue working the first shift. *Id.* at ¶ 20. Her last day of work was March 6, 2020. *Id.* at ¶ 23. She alleges GKN "constructively discharged" her on that date. *Id.*

Webb filed a charge of discrimination with the Missouri Human Rights Commission and the Equal Employment Opportunity Commission (EEOC) on September 16, 2020, alleging GKN harassed and retaliated against her because of her disability. *Id.* at ¶ 24. She received an EEOC right-to-sue letter on September 25, 2020, and received a right-to-sue letter from the Missouri commission on January 25, 2022. *Id.*

She initially filed a lawsuit in state court on December 22, 2020, but asked the court to "hold service." Doc. 1-3. She requested summons on January 27, 2022, and the court issued the summons on February 8, 2022. *Id.* GKN removed the case, Doc. 1, and moves to dismiss, Doc. 14. The parties have fully briefed the motion. Docs. 15, 17, 26. The Court also granted Webb's unopposed motion to dismiss with prejudice the two individual defendants, John Cunningham Jr. and Derrick Varner, leaving the two GKN entities as the remaining defendants. Doc. 30.

**II.     Standard**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The notice pleading standard of Rule 8(a)(2) of the Federal Rules of Civil Procedure requires the plaintiff to give "a short and plain statement showing that the pleader is entitled to relief . . . ." To meet this standard and to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). The Court must grant all reasonable inferences in favor of the nonmoving party. *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010). Ordinarily, only the facts alleged in the complaint are considered for purposes of a motion to dismiss; however, materials attached to the complaint may also be considered in construing its sufficiency. *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff . . . ." *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010). However, if a claim fails to allege one of the elements necessary to recover on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted. *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011). Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Although courts must accept all factual allegations as true, they

4

are not bound to take as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555 (citation omitted); *Iqbal*, 556 U.S. at 677–78.

**III.    Discussion**

GKN argues that the Court should dismiss the entirety of Webb's amended complaint because she failed to prosecute the case. Doc. 15 at pp. 5–7. GKN also argues that the Court should dismiss each of Webb's four counts for failure to state a claim. The Court addresses GKN's failure-to-prosecute argument before turning to its failure-to-state-a-claim argument.

**A.    Failure to prosecute**

GKN argues that the Court should dismiss the case because Webb filed her lawsuit in state court on December 22, 2020, but did not request summonses from the state court until January 27, 2022—over a year later. Doc. 15 at p. 2. GKN argues that this delay "in effectuating service has resulted in prejudice to Defendants, warranting dismissal under Rule 41(b) of the Federal Rules of Civil Procedure." *Id.* at p. 5.

In *Boyle*, the Eighth Circuit agreed with the Ninth Circuit that:

> [U]nder the doctrine of *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), and its progeny, rule 41(b) is applicable to a removed action and may form the basis for dismissal of such an action. *See Grivas v. Parmelee Transp. Co.*, 207 F.2d 334, 337 (7th Cir. 1953). However, in deciding whether a delay on the plaintiff's part prior to removal constitutes a failure to prosecute as a matter of federal law . . . , the district court should consider whether the plaintiff was within [her] rights under the relevant state law.

*Boyle v. Am. Auto Serv., Inc.*, 571 F.3d 734, 738 (8th Cir. 2009) (quoting *Nealey v. Transportacion Maritima Mexicana, S. A.*, 662 F.2d 1275, 1278–79 n.5 (9th Cir. 1980)); *see also id.* at 741 ("We are persuaded by the Ninth Circuit's rationale, as expressed in *Nealey* . . . , as it is well-reasoned and in line with our prior precedent." (quoting *Winkels v. George A. Hormel & Co.*, 874 F.2d 567, 568 (8th Cir. 1989) ("[W]e will follow the general rule that state procedural rules govern cases originating in state court *until removed to federal court*."))).

GKN, which removed this case on March 10, 2022, does not identify any post-removal delays. *See* Doc. 15 at pp. 5–7. Thus, as the only delay at issue in this case occurred before removal, the Court must look to Missouri law to determine whether that delay was within Webb's rights. *See Boyle*, 571 F.3d at 738 (quoting *Nealey*, 662 F.2d at 1278–79 n.5). In other words, if Webb accomplished service "within the period allowed by [Missouri] law," then "there is no justification for holding [Webb]'s delay to have been unreasonable . . . ." *Id.* at 740 (quoting *Nealey*, 662 F.2d at 1281–82).

Missouri Supreme Court Rule 54 governs service of process for civil actions in Missouri circuit courts. Missouri Supreme Court Rule 54.01 states that "[u]pon the filing of a pleading requiring service of process, the clerk shall forthwith issue the required summons or other process." Further, Missouri Supreme Court Rule 54.21 states:

> The officer or other person receiving a summons or other process shall serve the same and make return of service promptly. If the process cannot be served it shall be returned to the court within thirty days after the date of issue with a statement of the reason for the failure to serve the same; provided, however, that the time for service thereof may be extended up to ninety days from the date of issue by order of the court.

As Webb points out, Missouri Supreme Court Rule 54.21 differs from Rule 4(m) of the Federal Rules of Civil Procedure; while the federal rule requires a plaintiff to serve defendants within 90 days after filing a complaint (or show good cause for failing to do so), Missouri Supreme Court Rule 54.21 contains no such requirement. Rather, it only addresses what a plaintiff must do after the state court issues a summons.

GKN does not dispute that Webb timely served GKN after the state court issued the summons. Instead, GKN points out that Webb waited more than one year to request summonses after filing her complaint in state court. Doc. 15 at p. 5. According to GKN, this "unreasonable year-long delay in effectuating service has resulted in prejudice to Defendants, warranting dismissal." *Id.*

6

In support of this argument, GKN relies on *Boyle*, 571 F.3d at 736–37. But in that case, the Eighth Circuit determined that Boyle "*did not* comply with Missouri Law" because he not only failed to serve the defendants within 30 days after the court issued the summonses, but also failed to request "a 90-day extension to effect service." *Id.* at 742 (quoting Mo. Sup. Ct. R. 54.21). Because the delay here occurred before the state court issued the summons, *Boyle* does not support GKN's argument.

Next, GKN relies on *Hammond v. 801 Rest. Group, LLC*, No. 21-cv-00209, 2021 WL 2438916, at *4 (E.D. Mo. June 15, 2021). In *Hammond*, the district court declined to dismiss the case for failure to prosecute, finding that the plaintiff's "attempts to effectuate service were in some measure hampered by difficulties associated with the pandemic and attendant shutdowns." *Id.* The district court held that these difficulties differentiated the case from *Boyle*, where the plaintiff failed to provide *any* justification for the delay. *Id.* But as the district court did not identify whether the delay occurred before or after the state court issued the summons, *Hammond* does not definitively support GKN's argument here.

GKN also relies on *Gartin v. Par Pharm. Companies, Inc.*, 289 F. App'x 688 (5th Cir. 2008). Because that case began with the filing of a complaint in federal district court, Rule 4(m) of the Federal Rules of Civil Procedure required the plaintiffs to serve the defendants within 120 days. *Id.* at 693. The Fifth Circuit affirmed the district court's holding that the plaintiffs did not show good cause for failing to serve the defendant within Rule 4(m)'s 120-day period. *Id.* But as noted above, Rule 4(m) does not govern the pre-removal delay here. Thus, *Gartin* does not support GKN's argument.

As GKN has not provided any authority establishing that Webb's delay in obtaining summons violated Missouri Supreme Court Rule 54.21, or any other state rule, the Court is unable to conclude that Webb's delay fell outside "the bounds of the applicable law," and thus

7

"there is no justification for holding [Webb]'s delay to have been unreasonable." *Boyle*, 571 F.3d at 740 (quoting *Nealey*, 662 F.2d at 1281–82); *cf. State v. Morris*, 397 S.W.3d 927, 930 (Mo. Ct. App. 2013) (discussing Missouri Supreme Court Rules and noting that, for statute-of-limitations purposes, a complaint is deemed filed even if the plaintiff does not request that the clerk issue a summons (citing *Ostermueller v. Potter*, 868 S.W.2d 110 (Mo. 1993))). The Court denies GKN's motion to dismiss for failure to prosecute on this basis alone.

Additionally, even if the Court were to conclude that Webb *did not* comply with state law, the Court would still not dismiss for failure to prosecute. In making the Rule 41(b) determination "the [C]ourt must exercise its discretion by weighing the relevant factors—time, excuse, and prejudice." *Boyle*, 571 F.3d at 740 (quoting *Nealey*, 662 F.2d at 1281). And when making this determination, like the Eighth Circuit the Court "[l]ooks to the policy considerations enunciated in *Nealey*." *Id.* at 742. Thus, the Court heeds *Nealey's* guidance that "[w]here a delay has not been unreasonable, where the defendant has suffered no actual prejudice, or where the plaintiff has cured his lapse in state court and been diligent in prosecuting his action following removal, the policy in favor of deciding cases on their merits should prevail over those which would favor dismissal." *Id.* (quoting *Nealey*, 662 F.2d at 1284).

Following the Eighth Circuit's analysis in *Boyle*, the Court first notes that with regard to "the court's need to manage its docket" and "the public interest in expeditious resolution of litigation," here there was no post-removal inactivity or failure to prosecute "that interfered with the federal goal of 'secur[ing] the just, speedy, and inexpensive determination of every action.'" *Boyle*, 571 F.3d at 739 (quoting *Nealey*, 662 F.2d at 1279). Thus, the Court does not consider "administrative concerns" when exercising discretion under Rule 41(b) in this case. *Id.* (quoting *Nealey*, 662 F.2d at 1279).

8

Further, Webb provided a non-frivolous explanation for her delay. *Id.* at 743 (quoting *Nealey*, 662 F.2d at 1281). She explains that she was waiting for confirmation from the Missouri Commission on Human Rights that it had terminated its investigation—which the Commission took far longer to provide than she anticipated. Doc. 17 at p. 5. Webb also appears to have experienced some confusion stemming from the Commission's administrative process. *Id.* at pp. 5–6. And once she received her right-to-sue letter from the Commission, she promptly filed an Amended Complaint and requested that the state-court clerk issue summons. Doc. 17 at p. 6; Doc. 17-1.

"[W]here a plaintiff has come forth with an excuse for his delay that is anything but frivolous, the burden of production shifts to the defendant to show at least some actual prejudice." *Boyle*, 571 F.3d at 743 (quoting *Nealey*, 662 F.2d at 1281). Here, GKN states without further elaboration that "key witnesses have left employment with GKN, limiting GKN's ability to secure testimony and properly investigate [Webb]'s claims." Doc. 26 at p. 6. GKN also states that it has "announced closure of its St. Louis facility, with final shuttering planned for 2023," and thus "employees who would have information or knowledge about [Webb]'s claims will no longer be under the control of [GKN]." *Id.*

As mentioned, GKN also cites *Gartin*, a Fifth Circuit case, for the proposition that filing a complaint right before the running of the statute of limitations and then indefinitely delaying service is "prejudicial by its very nature." 289 F. App'x at 694 ("If service can be delayed indefinitely once the complaint is filed within the statutory period, these expectations are defeated and the statute of limitations no longer protects defendants from stale claims."). However, in Missouri this argument carries less weight, because the Supreme Court of Missouri has held that no "due diligence" requirement exists when determining whether a plaintiff has commenced an action within the statute of limitations. *See Morris*, 397 S.W.3d at 930 ("[T]he

9

question before us is whether *Ostermueller* stands for the proposition that the petition is filed even if the clerk is not requested to issue a summons. The answer is 'yes.'" (citations omitted; collecting cases)).

Weighing the time, excuse, and prejudice factors here, the Court finds that although this is a closer case than *Boyle* or *Nealey*, in that Webb and GKN have provided at least some explanation of delay and prejudice, respectively, dismissal for failure to prosecute is not warranted. The Court denies GKN's motion on this basis, as well.

### B. Failure to state a claim

GKN argues that Webb's Amended Complaint fails to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," as Rule 8(b)(2) requires. Doc. 15 at pp. 7–8. GKN claims Webb "failed to plead sufficient facts to provide adequate notice of her claims," leaving GKN unable to determine "which factual allegations support each of [her] distinct claims." Doc. 15 at pp. 7–8. GKN also advances various other reasons why the Court should dismiss each of Webb's claims. The Court addresses GKN's arguments regarding each count of Webb's amended complaint in turn.

#### 1. Counts 1 and 2

GKN argues that count 1 and count 2 of Webb's amended complaint each fail to state a claim for discrimination under the ADA. Doc. 15 at p. 9. Webb argues that she has alleged facts stating disability-discrimination claims under the ADA. Doc. 17 at pp. 8–13. The Court agrees with Webb.

As an initial matter, the Court observes that "[t]he complaint is not required to fit any specific model since there is no 'rigid pleading standard for discrimination cases.'" *Cook v. George's, Inc.*, 952 F.3d 935, 938–39 (8th Cir. 2020) (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002)). "Instead, the 'simplified notice pleading standard,' merely requires that

10

a complaint 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests[.]'" *Id.* (quoting *Swierkiewicz*, 534 U.S. at 512). While the complaint need not plead facts establishing a prima facie case of discrimination, "[t]he elements of a successful ADA claim are . . . still 'part of the background against which a plausibility determination should be made.'" *Id.* (quoting *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016)).

The ADA mandates that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees . . . ." 42 U.S.C. § 12112. The ADA defines a "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

With respect to an individual, the ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). And "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." § 12102(2)(A). The ADA further provides that "[t]he definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." § 12102(4)(A).

The allegations in counts 1 and 2 Webb's amended complaint are sufficient to state disability-discrimination claims based on these elements. Webb does not merely allege that she has a disability—she alleges that as a result of injuries she suffered in a motorcycle accident in 2013, her doctors restricted her from "driving at night" and from "pulling, pushing or lifting anything over 10 to 25 [pounds]." Doc. 9 at ¶ 9. She also alleges GKN agreed to provide

11

reasonable accommodations for her disability, allowing her to work the first shift instead of the second shift, since the latter would require her to drive at night and would require her to move items over 10 to 25 pounds if she was the only employee working at night.  *Id.* at ¶ 16.  She alleges that she worked the first shift for about seven years.  *Id.*

Webb has also plausibly alleged that GKN constructively discharged her by moving her to the second shift in bad faith, knowing that she would not be able to do so because of her disability.  *Id.* at ¶ 29.  And Webb has plausibly alleged that before her constructive discharge she "was subject to unwelcome harassment . . . based on [her] disability and/or her requests for accommodation."  *Id.* at ¶¶ 24–25.  Though she acknowledges that the harassment began as a result of her "whistleblowing," she argues that "Defendants knew of her disability, and chose to incorporate her disability into their ongoing harassment," Doc. 17 at p. 13, including by labeling her request for accommodation as "insubordination," Doc. 9 at ¶ 21.

Thus, the Court finds that, Webb has plausibly alleged that GKN violated the ADA by subjecting her to harassment and a hostile work environment, and by constructively discharging her by moving her to the second shift despite her physical limitations.  The Court notes that, as in *Cook*, Webb "may eventually attempt to prove intentional discrimination by indirect *and* direct evidence." *Cook*, 952 F.3d at 940 (citing *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004)).  For this reason the Court "do[es] not hold [Webb] to alleging a rigid prima facie case at this stage of the litigation."  *Id.* (citing *Swierkiewicz*, 534 U.S. at 511–12).  Accordingly, the Court denies GKN's motion to dismiss counts 1 and 2.

    **2.**    **Count 3**

GKN argues that the Court must dismiss count 3, "Violation of the Missouri Human Rights Act," because Webb failed to timely file her charge of discrimination with the Missouri

Commission on Human Rights, as the Act requires. Doc. 15 at pp. 9–11; Doc. 26 at pp. 7–8. The Court agrees.

The Eighth Circuit has held that "[i]f an affirmative defense . . . is apparent on the face of the complaint . . . that [defense] can provide the basis for dismissal under Rule 12(b)(6)." *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8th Cir. 2012) (alterations in original); *see also Jones v. Bock*, 549 U.S. 199, 215 (2007). And the Eighth Circuit's "interpretation of the phrase 'face of the complaint . . . include[s] public records and materials embraced by the complaint,' and 'material[s] attached to the complaint.'" *Lobrano*, 695 F.3d at 764 (first quoting *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 983 (8th Cir. 2008); then quoting *Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1244 (8th Cir. 2006)).

To bring a discrimination claim under the Missouri Human Rights Act, a plaintiff must: (1) file a charge of discrimination with the Missouri Commission on Human Rights "within one hundred eighty days of the alleged act of discrimination"; (2) receive a right-to-sue notice from the Commission; and (3) file a civil action in the appropriate circuit court within ninety days of receiving the notice. Mo. Rev. Stat. §§ 213.075(1), 213.111.1(1). Notably, the Act provides that:

> Notwithstanding any other provision of this chapter to the contrary, if a complaint is not filed with the commission within one hundred eighty days of the alleged act of discrimination, the commission shall lack jurisdiction to take any action on such a complaint other than to dismiss the complaint for lack of jurisdiction. The failure to timely file a complaint with the commission may be raised as a complete defense by a respondent or defendant at any time, either during the administrative proceedings before the commission, or in subsequent litigation, regardless of whether the commission has issued the person claiming to be aggrieved a letter indicating his or her right to bring a civil action and regardless of whether the employer asserted the defense before the commission.
>
> Any complaint which is filed with the federal Equal Employment Opportunity Commission or other federal agencies with which the commission has a work-sharing or deferral agreement, or with a local commission which has been certified as substantially equivalent by the commission, shall be deemed filed with the

13

> commission on the date that such complaint is received by such federal agency or local commission.

Mo. Rev. Stat. § 213.075.

The Court notes that in their pleadings and briefs the parties use the term "charge of discrimination," from federal employment law, to refer to the "complaint" Webb filed with the Missouri commission. The Court follows suit to avoid any confusion between the "charge" Webb filed with the Missouri commission and her pleadings in this case.

Webb alleges that GKN constructively terminated her "on or about" March 6, 2020, her last day of work. Doc. 9 at ¶ 23. Though in her amended complaint she alleges other acts of discrimination took place before her constructive discharge on March 6, 2020, she does not allege any discriminatory events occurred after that date. Webb alleges she filed a charge of discrimination with the Missouri Commission on Human Rights on September 16, 2020. *Id.* at ¶ 24. She also alleges she filed a charge of discrimination with the EEOC on the same date. *Id.* However, she did not attach either charge to her initial complaint or amended complaint, or provide them anywhere else in the record. Thus, based on the allegations in her amended complaint, Webb filed her charge of discrimination two weeks after the 180-day deadline.

Webb argues that because she received right-to-sue letters from the EEOC and the Missouri commission, she "has exhausted all of her administrative remedies," Doc. 9 at ¶ 24, and that GKN's argument is thus "a factual attack . . . , rather than an attack on the sufficiency of the pleading itself, as required by Rule 12(b)(6)," Doc. 17 at p. 16. But, of course, while the Court "must accept all factual allegations as true, [it is] not bound to take as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (citation omitted); *Iqbal*, 556 U.S. at 677–78. Further, the Act provides that "failure to timely file a complaint with the commission" is a complete defense that GKN may raise at any time—including during

14

"subsequent litigation" and regardless of whether the commission issued Webb a right-to-sue letter.   Mo. Rev. Stat. § 213.075.1.

In her Opposition to Defendants' motion to dismiss, Webb also claims for the first time that in her charge of discrimination to the Missouri Commission on Human Rights, "which is an administrative record referenced in her [complaint], [she] alleges that the last occurrence of discrimination was March 26, 2020."   Doc. 17 at p. 17.   But while it is true that the Court may consider administrative records referenced in a complaint, the Court is unable to do so here because Webb chose not to attach her charge of discrimination to her complaint or provide it anywhere in the record.   And as the Court previously noted, based on the allegations in her complaint, the last act of discrimination occurred on March 6, 2020, making her charge of discrimination untimely.   For this reason, the Court dismisses count 3.   *See Lobrano*, 695 F.3d at 764.

3.      **Count 4**

GKN argues that the Court must dismiss count 4, which bears the heading "Termination in Violation of Public Policy," because it falls into the category of common-law wrongful-discharge claims the Missouri legislature abrogated by passing the Whistleblower's Protection Act in 2017.   Doc. 15 at pp. 11–12.   Alternatively, GKN argues that Webb fails to state a claim under that Act.   Doc. 26 at pp. 8–9.   Webb does not dispute that count 4 could not survive as a common-law claim; instead, she argues that count 4 states a claim under the Missouri Whistleblower's Protection Act, even though she does not mention that Act anywhere in her amended complaint.   Doc. 17 at pp. 17–20; *see Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848–49 (8th Cir. 2014) ("[A] complaint should not be dismissed merely because a plaintiff's allegations do not support the particular legal theory [s]he advances, for the court is

15

under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory." (citing *Bramlet v. Wilson*, 495 F.2d 714, 716 (8th Cir. 1974))).

The Whistleblower's Protection Act declares that "[i]t shall be an unlawful employment practice for an employer to discharge an individual defined as a protected person in this section because of that person's status as a protected person."   Mo. Rev. Stat. § 285.575(4).   The Act defines an "employer" as "an entity that has six or more employees," but excludes "the state of Missouri or its agencies, instrumentalities, or political subdivisions," as well as "an individual employed by an employer."   Mo. Rev. Stat. § 285.575.2(2).   It defines a "protected person" as an employee who has:   (1) "reported to the proper authorities an unlawful act of his or her employer;" (2) "report[ed] to his or her employer serious misconduct of the employer that violates a clear mandate of public policy as articulated in a constitutional provision, statute, or regulation promulgated under statute;" or (3) "refused to carry out a directive issued by his or her employer that if completed would be a violation of the law."   Mo. Rev. Stat. § 285.575.4.

Under the Act, "because" means:   "as it relates to the adverse decision or action, the person's status as a protected person was the motivating factor."   Mo. Rev. Stat. § 285.575. Further, "[t]he motivating factor" means:   "the employee's protected classification actually played a role in the adverse decision or action and had a determinative influence on the adverse decision or action."   Mo. Rev. Stat. § 285.575.

The Court finds that Webb states a claim under the Whistleblower's Protection Act. First, though Webb does not directly allege that GKN is an entity with six or more employees, she does mention at least six:   Matt Touhy, Jonathon Lipko, Keith Schrader, John Cunningham, Derrick Venera, and herself.   Doc. 9 at ¶¶ 19–20.   And GKN does not argue that it is not an "employer" under the Act.

16

Second, she alleges facts that, taken as true, make her a "protected person" under the Act. She alleges that "[Federal Aviation Administration] regulations create safety and certification standards and requirements for airplane production and airplane parts and require that aircraft manufacturers adopt and follow a quality control system that ensures that each product and article conforms to its approved design and is in a condition for safe operation." Doc. 9 at ¶ 47. She includes a list of these regulations in her amended complaint. *Id.* at ¶ 10.

Starting in 2015, she alleges that "as required by her job duties [she] refused to approve 'out of specification operations' in the facility; refused to approve parts that had lost 'traceability'; and refused to approve the use of expired adhesive in the making of airplane wing parts because it would violate F.A.A. regulations." *Id.* at ¶ 11. She claims that in 2019 she "reported upper management at GKN . . . to Ethics for mismanagement, unethical behavior, and violation of applicable standards and policies, including demanding approval for out of specification operations, wanting Plaintiff to move parts where none of the work order had been filled out losing traceability, and for having employees "lay-up" expired adhesive." *Id.* at ¶ 12. The Court finds that these allegations, taken as true, render Webb a "protected person" under the Whistleblower's Protection Act.

Third, Webb alleges facts supporting her allegation that GKN constructively discharged her "because of" her protected status.  She claims that after her ethics complaint, "team leaders and other managers and supervisors . . . repeatedly harassed [her] and made the work environment hostile . . . ." *Id.* at ¶ 14. She alleges the harassment included:  (1) "delivering parts to other employees but not [her], preventing her from doing her job"; (2) "mocking and laughing at [her]"; (3) "yelling at [her] with no cause"; and (4) "verbally abusing [her] and throwing a work order at her in front of other employees." *Id.* at ¶ 15. She claims the harassment began after she filed her ethics complaint and that it "intensified until early 2020."

17

*Id.* She alleges that "[a]s a result of Defendants' discrimination and retaliation for Plaintiff's asserting her legal rights and whistleblowing, Plaintiff was constructively discharged . . . on or about Friday, March 6, 2020." Doc. 9 at ¶ 23. For these reasons, the Court finds that Webb plausibly states a claim under the Whistleblower's Protection Act.

## V.     Conclusion

Accordingly, the Court grants in part and denies in part GKN's [14] Motion to Dismiss Webb's Amended Complaint. The Court grants the motion to dismiss count 3, and denies the motion to dismiss counts 1, 2, and 4.

So Ordered this 19th day of August 2022.

_____
STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE